UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES WIRTH, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CAROLYN COLVIN,  Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | CASE NO. C13-2154 MJP<br><br>ORDER ON MOTION FOR RELIEF FROM COURT'S ORDER |

　　　The above-entitled Court, having received and reviewed

　　　1.　Defendant's Motion for Relief from Court's Order (Dkt. No. 33),

　　　2.　Plaintiffs' Response to Defendant's Motion for Relief from Court's Order (Dkt. No. 35),

all attached exhibits and declarations, and relevant portions of the Administrative Record (Dkt. No. 25; "AR"), rules as follows:

　　　IT IS ORDERED that Defendant's motion is GRANTED IN PART and DENIED IN PART:

1. The Court WITHDRAWS its previous order (Dkt. No. 32).
2. The Court REVERSES the decision of the Commissioner that (a) Plaintiffs were at fault in causing the overpayment at issue and (b) that Plaintiffs are liable for repayment of the full amount of the overpayment.
3. The Court orders that, good cause appearing, recovery of the SSI overpayment from Plaintiffs is WAIVED.

**Background**

This case came before the Court on appeal from a determination of overpayment of SSI benefits to Plaintiffs' daughter and a rejection of Plaintiffs' request for a waiver of the overpayment. Magistrate Judge James Donohue issued a Report and Recommendation ("R&R") to affirm the finding of the Administrative Law Judge ("ALJ") rejecting Plaintiffs' request for a waiver of the recovery of their overpayment. (Dkt. No. 29.) Upon review of the R&R, this Court declined to adopt the recommendation and instead issued an order remanding the matter to the ALJ for redetermination in light of the Court's finding that Plaintiffs were misinformed about the way that their income would be calculated for eligibility purposes and the nature of their obligation to report income which potentially exceeded their eligibility levels and overpayments of their benefits. This matter was ordered to be stayed pending reconsideration by the ALJ. (Dkt. No. 32.)

The Government filed a "Motion for Relief from Court's Order" (Dkt. No. 33) which was essentially a motion for reconsideration. The motion made two arguments:

1. That relief from the obligation to repay required a finding that Plaintiffs were <u>without fault</u> and that there were other circumstances suggesting that (even if they had been initially misinformed) they were not blameless in the three-year period of overpayments which they received.

2. That the Court's attempt to retain jurisdiction by merely staying this matter while the ALJ reconsidered her finding was not permitted by federal statute (specifically, 42 U.S.C. § 405(g)).[1] Defendant asserted that the Court was required to issue a judgment and did not have the authority to stay the matter. (Defendant is correct, and the Court conceded this in the order calling for a response to the motion from Plaintiffs. *See* Dkt. No. 34.)

## Discussion/Analysis

In light of Defendant's request, the Court has reviewed the record extensively and concluded that this matter is worthy of reconsideration, albeit not in the direction Defendant intended.

Over the course of the more than three years at issue (May 2005 – July 2008), Plaintiffs' income and resources exceeded the amount that would have qualified them for the SSI payments (Plaintiffs do not contest this). However, in order to assess those overpayments against Plaintiffs, the Social Security regulations require a finding of fault "*in connection with* the overpayment." 20 CFR § 416.550(a)(emphasis supplied). A thorough examination of the decision of the ALJ which assessed Plaintiffs' fault in this matter reveals that the factual findings consist of evidence that the material requested by the SSA from the point where the agency

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

apparently first suspected that overpayments had been made (i.e., approximately June 2008) was not provided in a timely manner.

Although this is disputed by Plaintiffs – who not only deny receiving the earliest communications regarding the overpayment from the SSA, but also contend that they made numerous unsuccessful attempts to contact the agency -- the ALJ found against them. But focusing on what Plaintiffs did or did not do <u>after</u> the agency suspected that overpayments had been made, <u>after</u> the agency had contacted them for an explanation, and <u>after</u> they had suspended SSI payments is not a relevant inquiry nor the proper basis upon which to reject a waiver request. Requiring that Plaintiffs have been at fault "*in connection with* the overpayment" can only reasonably be read as a requirement that a claimant have been at fault at (or shortly after) the time the overpayment was made – failure to adequately respond to requests for information to investigate a question of overpayment after the fact does not constitute being "at fault" in the overpayment.

The Government articulates the nature of Plaintiffs' alleged fault in the following fashion:

> Because Plaintiffs failed to furnish information they knew or should have known to be material, and because they did not return payments they knew or could have been expected to know were incorrect, they are at fault notwithstanding any additional fault on the Administration's part.

(Dkt. No. 33, Motion at 3.) Defendant is citing to one of the three grounds enumerated in the CFRs for a finding of fault for an SSA overpayment. 20 CFR 416.552(a). This speaks directly to the "contemporaneous" nature of the at-fault requirement. The regulations clearly contemplate that claimants, as they receive income or other resources which exceed the SSI

qualification thresholds or as they receive payments which they knew or should know are excessive, are expected to notify the SSA.

But the issue of exactly <u>how</u> Plaintiffs could reasonably be expected to know what was required of them at the time the overpayments were being made is at the heart of this appeal. Plaintiffs testified that their SSA intake caseworker (a woman identified as "Lyn Fry") told them that (1) their income would be calculated for eligibility purposes by averaging their annual income on a monthly basis (important to Plaintiffs because of Mr. Wirth's commission-based salary, which could fluctuate widely from month to month)(Dkt. No. 35 at 2, 3) and (2) they should not return any suspected overpayments because it would create "a mountain of paperwork" (Dkt. No. 30, Objections at 2) and "an accounting nightmare." (AR; Ex. 40 at 163.)

The Court is convinced, after reviewing the record thoroughly, that Plaintiffs were (1) credible when they testified that this is what they were told and what they relied on in their interactions with the SSA and (2) correct that the agency knew that Lyn Fry had a history of disseminating this kind of misinformation. (*See* Dkt. No. 32, Order on R&R at 3-5.)   This evidence goes to the heart of what Plaintiffs knew or could reasonably have been expected to know <u>at the time</u> when the overpayments were being received.

The Court also recognizes that there is some basis for Defendant's position that Plaintiffs should have known that their income was increasing past the point of eligibility for SSI benefits and that they should have known to notify the SSA. The SSI Notice of Award (AR 414; dated August 29, 2005) stated that:

    a. The benefit was being awarded based on a monthly wage of $3333.33
    b. "[Y]ou should tell us if… income or resources for [your daughter] or members of her household change"

There is no question that, over the three-year period at issue, Plaintiffs' income changed upwardly (to an average of approximately $5000/month) and that Plaintiffs did not report this information to the SSA. Plaintiffs had, on the one hand, a document telling them that changes in income should be reported to the agency and, on the other hand, an SSA employee telling them that their income was being averaged over a 12-month period (a counter-indication to reporting monthly swings not unusual in a commission-based income) and not to return checks which might represent (for that month) an overpayment because it would "create an accounting nightmare." How is fault to be assessed in the face of these contradictory directives, both from "official" sources?

The Court believes that the answer lies in the SSA Program Operations Manual System ("POMS"), described on the SSA website as "a primary source of information used by Social Security employees to process claims for Social Security benefits." (*See* https://secure.ssa.gov/apps10/poms.nsf/Home?readform.) The Manual contains a section on "Misinformation From an Official Source – Waiver." (POMS GN 02250.061; https://secure.ssa.gov/apps10/poms.nsf/lnx/0202250061.) The relevant portions provide:

> **A. Policy**
>
> A person is without fault for an overpayment if the person (or the person's representative) relied on incorrect information from:
>
> - An official source within SSA; or
> - Some other governmental agency which the individual has reason to believe was connected with the administration of RSDI benefits.
>
> **1. Active Seeking of Information**
>
> A person is misinformed only when he actively sought information which subsequently proved to be incorrect. Misinformation can be given both orally and in a notice. However, a routine notice is never cause for misinformation. For

example, misinformation does not apply to the AERO notice received by a person who has received an incorrect benefit computation.

\* \* \*

**B. Procedure**

**1. Statement of Person Alleging Misinformation**

Obtain a full explanation for the person's reliance on incorrect information in the person's own words. Have the person describe the situation that created the need for information and the facts available to the provider of the information. Have the person summarize the information received and give the time and place it was received.
\* \* \*

3. Resolve Any Doubt in Favor of Beneficiary

If development does not preclude a finding of misinformation and the detailed allegation is consistent with the facts of the case, resolve any doubts in favor of finding that the beneficiary did receive misinformation.

The Court finds that Plaintiffs "relied on incorrect information from an official source within SSA" and that the Plaintiffs "actively sought information which subsequently proved to be incorrect" at two points: (1) when they were initially interviewed by Lyn Fry and informed (incorrectly) that Mr. Wirth's commission income would be calculated at a monthly average and (2) when Mrs. Wirth called Ms. Fry to express her concern that Mr. Wirth's income for the month was too high to qualify for the SSI benefit and was told not to send the check back because it "would create an accounting nightmare." (S*ee* Ex. 40, AR 163.)

Further, the Court finds that the evidence confirms that the SSA knew about its caseworker's propensity for dispensing incorrect information (not only as documented in this Court's previous order – Dkt. No. 32 at 3-5 – but also as found by the agency's own Field

Manager upon review of Plaintiffs' file[2]). This satisfies the Manual's requirement that the claimants' allegations be "consistent with the facts of the case;" in this case, consistent with the agency's own information about their employee's negligent misrepresentations. The evidence of "misinformation" is solid and this finding triggers the Manual's admonition to "resolve any doubts in favor of finding that the beneficiary did receive misinformation." Based on these conclusions, the Court finds (consistent with the SSA's own policy) that Plaintiffs were "without fault" in the matter of the overpayment at issue.

The second prong of the waiver of recovery test requires a finding that "repayment would defeat the purposes of the Social Security Act or be contrary to equity and good conscience." 20 CFR 404.506. The Court makes two findings in this regard. First, that Plaintiffs have adequately plead that they do not have the resources to repay the amount of SSI benefits that they were overpaid. *See* Dkt. No. 30, Objections at 3; Dkt. No. 35, Response at 5; *see also* Transcript of Hearing, AR at 558 (where Plaintiffs attempted to raise the issue of financial inability with the ALJ, who rebuffed their attempt -- "I'm not getting to that yet" – and then never gave them the opportunity to return to the issue).

Secondly, the Court notes that the POMS clearly indicates, at 2250.061A,

> **3. How Misinformation Is Applied**
>
> \* \* \*
>
> If misinformation is established, recovery is deemed to be against equity and good conscience.

---

[2] "I do feel that you may not have been given good information with the initial claim to know that we counted income monthly and did not average income over several months when wages are involved… [Y]ou maybe did not understand all of the income and resource reporting responsibilities either that could affect eligibility. I am not sure you could be expected to know you were receiving incorrect payments whether it be because of too much income or because of resources." 4/19/10 letter from Richard Beck, SSA Field Office Manager; AR at 40-41.

Therefore, with the Court's finding that "misinformation" has been established, recovery is presumptively "against equity and good conscience" and the second prong of the waiver test is automatically satisfied.

### Conclusion

The Court has determined, upon further review, that its previous Order did not properly apply the regulations which govern the determination of overpayment recovery in light of misinformation having been supplied to a claimant for benefits. Applying those regulations, the Court concludes that the Plaintiffs received incorrect information from an official source within the SSA and, on that basis, (1) Plaintiffs are without fault in the overpayment of their benefits and (2) recovery would be against equity and good conscience.

The Court WITHDRAWS its previous order and REVERSES the decision of the Commissioner that (a) Plaintiffs were at fault in causing the overpayment at issue and (b) that Plaintiffs are liable for repayment of the full amount of the overpayment. The Court further orders that, good cause appearing, recovery of the SSI overpayment from Plaintiffs is WAIVED. The Court finds the authority for this ruling at 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

The clerk is ordered to provide copies of this order to Plaintiffs and to all counsel.

Dated this 15th day of April, 2015.

Marsha J. Pechman
United States District Judge